AO 106 (Rev 04/10) Application for a Search Warrant (USAO CDCA Rev 01/2013)          9/26/22 Chessie Pratt

Axxxx
9/26/22

# UNITED STATES DISTRICT COURT
### for the
#### Western District of Oklahoma

In the Matter of the Search of                )
*(Briefly describe the property to be searched*   )
*or identify the person by name and address)*    )      Case No. M-22- 708 -AMG
A SAMSUNG GALAXY S10E SMART PHONE, BLACK IN   )
COLOR, IMEI # UNKNOWN, CURRENTLY LOCATED AT THE  )
OKLAHOMA CITY POLICE DEPARTMENT                )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See Attachment A**

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §846 | Drug Conspiracy |
| 18 U.S.C. §922(g)(1) | Felon in Possession of a Firearm |

The application is based on these facts:

**See attached Affidavit**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**HARRISON FINCHAM, FBI Task Force Officer**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __9/26/22__

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma          **AMANDA MAXFIELD GREEN, U.S. Magistrate Judge**
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF A SAMSUNG GALAXY S10E SMART PHONE, BLACK IN COLOR, IMEI # UNKNOWN, CURRENTLY LOCATED AT THE OKLAHOMA CITY POLICE DEPARTMENT** | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE

I, Harrison Fincham, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession and further described in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the U.S. who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.  I have been employed by the

Oklahoma City Police Department (OCPD) since January 2008. I am currently assigned to OCPD Special Operations in the Special Projects group, where my responsibilities include investigating illegal drugs, firearms, money laundering, and violent crimes committed by members of criminal gangs, drug trafficking organizations and other criminal organizations. I am also a federal Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) in Oklahoma City.

3.     I have been involved in a wide variety of investigative matters. Among other responsibilities, I am responsible for conducting investigations into violations of state and federal criminal laws, including the manufacturing and possession of controlled substances with the intent to distribute. I have received approximately 26 weeks of specialized training at the Oklahoma City Police Academy in the enforcement of state and federal laws. I have taken several CLEET accredited courses regarding the investigation of illegal drug trafficking, firearms, and gang related offenses. Prior to my current assignment, I spent nearly a decade working Gang Enforcement and Violent Criminal Apprehension. I have arrested, interviewed, and debriefed numerous individuals who have been involved in and have personal knowledge of transporting and concealing controlled substances, as well as the amassing, spending, converting, transporting, distributing, laundering, and concealing of proceeds from drug trafficking and

smuggling. I have testified in judicial proceedings concerning the prosecution for violations of laws related to the smuggling and trafficking of contraband, including controlled substances. I have been the affiant on and assisted in numerous search warrants, including warrants relating to drug distribution and the unlawful possession of firearms and ammunition. I have coordinated the execution of search and arrest warrants, conducted physical surveillance, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute drugs.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.     The property to be searched is a Samsung Galaxy S10e, black in color, with gold glitter case, IMEI # unknown, hereinafter the "Device." The Device is currently located in secure evidence storage at the Oklahoma City Police Department.   The Device is described in more detail in Attachment A hereto.  Based on the facts set forth below, I believe there is probable cause to believe that the Device contains evidence of violations of 21 U.S.C. § 846, conspiracy to commit possession of a controlled substance with intent to distribute, as well as evidence of violations of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, as described further in Attachment B (description of items to be seized).

7.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## BACKGROUND REGARDING CELLULAR DEVICES

8.     Based upon my training and experience, I am aware that individuals involved in drug trafficking in large quantities are often involved in smuggling drug proceeds.  These individuals often use cell phones and other similar electronic devices, such as tablets and computers, to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal drugs.  Such devices and their

4

associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, videos, and applications. Based upon my training and experience, I know that most drug trafficking—and particularly high-level drug trafficking—is coordinated via cell phones and similar electronic devices. Conspirators use these devices to, *inter alia*, make requests for drug purchases, provide information on price, and set up places to meet for transactions. Consequently, cell phones and similar electronic devices of individuals involved in this drug conspiracy will likely contain evidence of such illegal activity.

9.     It has also been my experience that criminal subjects, especially gang members, will document possession of firearms on cellular devices through photographs and other similar forms. Gang members will also commonly have group photographs of themselves with other gang members with illegal drugs and/or firearms while demonstrating membership to their street gang through their dress, hand signs, and symbols.

10.     Therefore, I submit that there is probable cause to believe that the Device was used in furtherance of this drug-trafficking conspiracy and illegal possession of firearms and will contain evidence of the same.

## PROBABLE CAUSE

11.     On September 14, 2022, OCPD officers were conducting surveillance on ANTONIO RODRIGUEZ, DOB 03/08/1984, in anticipation of a federal complaint for a violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm, and subsequent search warrants being issued for his residence at 626 SE 39th Street, Oklahoma City, Oklahoma, and his business at 1000 SW 29th Street, Oklahoma City, Oklahoma (known as "Spiffy's Auto Detail"). This effort was being done based upon a previous firearm arrest by OCPD officers on May 4, 2022 (OCPD case number 2022-0031071) and RODRIGUEZ' suspected involvement in two recent gang-related shootings (OCPD case numbers 2022-0061389 & 2022-0066249). RODRIGUEZ is an admitted and documented member of the South Side Loco criminal street gang and a member of the Sureno prison gang.

12.     After the warrants were issued, officers in the vicinity of 1000 SW 29th Street observed RODRIGUEZ get into the passenger side of a gold Cadillac sedan bearing Oklahoma license plate MCV707, owned and operated by another gang member, STEVEN GONZALEZ, DOB 12/03/1992.

13.     At approximately 1410 hours, the Cadillac driven by GONZALEZ left Spiffy's Auto Detail and traveled south on S. Klein as undercover officers continued surveillance. Shortly after, a marked OCPD car arrived and attempted to initiate a traffic stop on the Cadillac. GONZALEZ failed to stop

and initiated a vehicle pursuit (OCPD case #2022-0066589). During the pursuit, RODRIGUEZ was able to exit the Cadillac while it was momentarily out of police sight. The pursuit continued to 7000 S. Walker where GONZALEZ was eventually arrested.

14. While the pursuit was going on, myself and other undercover officers were following RODRIGUEZ' spouse/girlfriend, LISHA CONSTANTINO, who was operating a 2016 White Ford Explorer SUV bearing OK license plate LLQ172. I observed the Explorer travel to the same area where officers stated they lost sight of the Cadillac and where I believed RODRIGUEZ exited the Cadillac. I believed that CONSTANTINO was in the area communicating with RODRIGUEZ by cell phone and attempting to locate and aid in his evasion of law enforcement. In my experience, I have witnessed subjects flee from police and contact friends or family members to drive to their location and pick them up. Law enforcement followed the Explorer to SW 36th St. and S. Indiana in Oklahoma City, where a traffic stop was conducted at approximately 1441 hours. CONSTANTINO was driving the Explorer and RODRIGUEZ was in the front seat. Notably, RODRIGUEZ had changed clothes since he was seen getting into the Cadillac. CONSTANTINO was called out from the driver seat and detained, and RODRIGUEZ was called out from the passenger seat and placed under arrest.

7

15.    Search incident to arrest, police recovered a black TCL smart phone, model 4188S, bearing IMEI #356806500060538, from the right front shorts pocket of RODRIGUEZ.

16.    CONSTANTINO gave verbal consent to search her vehicle to TFO C Vontungeln #1340 OCPD/FBI.  Items such as bank cards, a social security card, and bills in the name of CONSTANTINO were in the vehicle. In addition, two cell phones, an APPLE IPHONE IMEI# 353234104875032 and Samsung Galaxy S10e, black in color, with gold glitter case, IMEI # unknown, were in the driver side door where CONSTANTINO was sitting. No cell phones were located on CONSTANTINO.

17.    Once RODRIGUEZ was in custody, law enforcement executed the search warrants for the residence at 626 SE 39th Street and Spiffy's Auto Detail at 1000 SW 29th St.  Law enforcement located the following items at 626 SE 39th Street:

    a. 10 heat sealed plastic bags containing approximately 1000g of methamphetamine each;

    b. 1 plastic Ziplock bag containing 119g of methamphetamine;

    c. 1 plastic Ziplock bag containing 31g of methamphetamine;

    d. 1 opened heat seal bag of marijuana weighing approximately 80g;

    e. 1 unknown "GHOST" short barrel rifle, 5.56 caliber, with 50 round drum magazine and one 30 round magazine;

f. Items of dominion and control for RODRIGUEZ and CONSTANTINO;

g. 2 ballistic vests;

h. A Taurus TCP .380 caliber firearm, bearing serial number 41404E;

i. A Smith & Wesson M&P Shield .380 caliber firearm, bearing serial number RHV4924, which was reported stolen;

j. 1 large functional digital scale;

k. Box for Glock 27 firearm bearing serial number RFV385;

l. two .40 caliber magazines for a Glock handgun;

m. 1 "banana clip" style 12 gauge magazine;

n. 1 live 9mm round;

o. 9 live 12 gauge shotgun rounds;

p. 14 live .380 rounds in Monarch brand box;

q. 35 live 5.56 rounds; and

r. Drug ledgers and gang related artwork.

18.   Law enforcement located the following items at Spiffy's Auto Detail:

a. SIG SAUER 9mm pistol bearing serial number U412169;

b. Ruger .38 revolver bearing serial number 1541-26496;

c. 8 live rounds of Luger 9mm ammunition;

9

    d.  5 live rounds of .38 special ammunition;

    e.  Box of Winchester 9mm containing 6 live 9mm rounds full metal jacket (FMJ);

    f.  approximately 14 grams of methamphetamine;

    g.  1 functional digital scale;

    h.  1 Verizon flip phone;

    i.  1 Verizon ZTE smart phone;

19.    In total, methamphetamine in excess of 10,000 grams and five firearms, including a "GHOST" short-barrel rifle with no serial numbers, and over $6,000 in cash were seized. The majority of illegal drugs were in an officer room directly across from the master bedroom at 626 SE 39th St. which both RODRIGUEZ and CONSTANTINO live and have access to. This is a very large amount of methamphetamine for a person to possess, even for seasoned drug dealers where most "street level" sales are in much smaller amounts, typically less than 1 ounce. This amount shows that RODRIGUEZ and CONSTANTINO are well supplied and able to distribute large quantities of methamphetamine to other high level drug distributors. This amount is well in excess of the state's 20-gram requirement for trafficking methamphetamine.

20.    Moreover, graffiti-style artwork depicting the South Side Locos street gang was located inside of the residence and at Spiffy's Auto Detail.

21.     RODRIGUEZ has multiple prior felony convictions in Oklahoma. These convictions include Assault and Battery on a Police Officer, and Possession of a Firearm After Felony Conviction in Tulsa County Court 2002-1647; and Shooting with Intent to Kill and Robbery with a Dangerous Weapon in Oklahoma County Court 2003-3408. RODRIGUEZ is currently on probation for his Oklahoma County Court convictions.

22.     Based on my training and experience, I believe there will be evidence in these phones related to the aforementioned criminal activity. I also know from my experience that criminals and gang members frequently take photos of and with firearms. They also frequently have messages and/or other evidence on their phones related to crimes they are involved in, including possession of firearms, drug distribution and other contraband. Criminals use electronic/cellular devices, such as: cellular phones, electronic tablets, cellular or Bluetooth connected watches, computers, laptops, SIM cards, pagers, radios and other electronic means, to communicate and further their criminal activities. Pertinent information (such as call and text logs, messages, emails, applications, phone numbers, device locations, addresses, etc.) are stored on these electronic devices to contact or communicate with their co-conspirators.

23.     I am also aware that it is highly likely that CONSTANTINO and RODRIGUEZ were in contact via cell phone so that CONSTANTINO could

locate RODRIGUEZ after he fled from the Cadillac and evaded law enforcement.

## TECHNICAL TERMS

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones

may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera:   A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.   Digital cameras use a variety of fixed and removable storage media to store their recorded images.   Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.   Removable storage media include various types of flash memory cards or miniature hard drives.   Most digital cameras also include a screen for viewing the stored images.   This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.   However, a portable media player can also store other digital data.   Some portable media players can use removable storage media.   Removable storage media include various types of flash memory cards or miniature hard drives.   This removable storage media can also store any digital data.   Depending on the model, a

13

portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS:   A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation.   The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.     Each   satellite   repeatedly   transmits   by   radio   a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.   When a GPS antenna receives   signals   from   at   least   four   satellites,   a   computer connected   to   that   antenna   can   mathematically   calculate   the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA:   A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.   Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.   PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.   Removable storage media include various types of flash memory cards or miniature hard drives.   This removable storage media can store any digital data.   Most PDAs run computer software, giving them many of the same capabilities as personal computers.   For example, PDA users can work with word-processing documents, spreadsheets, and presentations.   PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).   Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that

computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

25.    Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, internet outlet with IP Address, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some

period of time on the device. This information can sometimes be recovered with forensics tools.

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

h. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

i. Forensic evidence on a device can also indicate who has used or controlled the Device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

j. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

k. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on the Device is evidence may depend on other information stored on the Device and the application of knowledge about how the Device operates. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

l. Further, in finding evidence of how a Device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

18

29.  *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

HARRISON FINCHAM
Task Force Officer
Federal Bureau of Investigations

Subscribed and sworn to before me on September 26th, 2022

HONORABLE AMANDA MAXFIELD GREEN
United States Magistrate Judge
Western District of Oklahoma

19

## ATTACHMENT A

The property to be searched is a Samsung Galaxy S10e, black in color, with gold glitter case and IMEI # unknown, hereinafter the "Device." The device is currently located at the Oklahoma City Police Department, 700 Colcord Drive, Oklahoma City, Oklahoma.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

Front of Phone



Back of Phone



## **ATTACHMENT B**

## **Particular Things to be Seized**

1. Evidence relating to violations of 21 U.S.C. § 846, conspiracy to possess
   with intent to distribute methamphetamine, a Schedule II controlled
   substance, and/or 18 U.S.C. § 922(g)(1), felon in possession of a firearm.
   Specifically, electronically stored data as well as deleted and temporary
   deleted data, including but not limited to:

   a. Device information and identifiers, including passwords and user
      and account identifiers and information;

   b. Any and all images, videos, audio recordings, and any other digital
      media content of co-conspirators, assets, illegal drugs and drug
      trafficking paraphernalia, or firearms and ammunition;

   c. call logs, address books or contacts, notes, emails, calendar
      entries, applications, chat messages, instant messages,
      multimedia (MMS) messages, text (SMS) messages, multimedia
      files, GPS data, internet access, web history and bookmarks, IP
      addresses and accounts, text messages, voicemail messages,;

   d. lists of customers and related identifying information;

   e. types, amounts, and prices of drugs trafficked as well as dates,
      places, and amounts of specific transactions;

    f.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    g.  all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

Records documenting the use of the Internet Protocol addresses to communicated with e-mail servers, internet sites, and social media, including:

    a.  records of Internet Protocol addresses used;

    b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media seized, electronically stored information, communications, other records and information seized, copied, or disclosed pursuant to this warrant in order to locate any evidence, fruits, and instrumentalities of violations of the above-listed federal criminal statutes. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, FBI Task Force Officer Fincham may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.